IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 09-10004-MOORE/SIMONTON

THE COUNTY OF MONROE, FLORIDA,

    Plaintiff,

vs.

PRICELINE.COM, INC., et al.,

    Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss Plaintiff's Amended Complaint[1] (dkt # 24). Plaintiff filed a Response (dkt # 26), and Defendants filed a Reply (dkt # 25).

I.     BACKGROUND

Plaintiff, the County of Monroe, Florida ("the County") brings this action on behalf of a putative class of Florida counties that have enacted tourist development taxes ("TDT"), and that allegedly have not received the amounts due from Defendants—various online travel

---

[1] On March 30, 2009, this Court entered an Order (dkt # 17) dismissing this matter without prejudice in light of the Parties' failure to timely file a joint scheduling report as required by Local Rule 16.1 and this Court's Pretrial Order (dkt # 3). Instead of filing a joint scheduling report and moving the Court to reopen this case, Plaintiff initiated a higher-numbered action, County of Monroe v. Priceline.com et al., Case No. 09-21002-CIV-UNGARO. That case was transferred and consolidated with this action. See id., Order of Consolidation (dkt # 13). Pursuant to the Order of Consolidation, the Parties filed a joint scheduling report (dkt # 20-2) in this matter. This Court then reopened this case and instructed the Parties to re-file the instant Motion and corresponding briefing. See Order Reopening Case (dkt # 21).

companies,[2] or "OTCs"—under those tax laws. This action is one of a number of similar lawsuits filed around the country by municipalities alleging that OTCs have failed to remit taxes due under local TDT ordinances.

Pursuant to its authority under § 125.0104(3)(a), Florida Statutes, the County imposes a tourist development tax[3]

> of three percent of each whole and major fraction of each dollar of the total rental charged every person who rents, leases or lets for consideration any living quarters or accommodations in any hotel, apartment hotel, motel, resort motel, apartment motel, roominghouse, tourist or trailer camp or condominium for a term of six months or fewer.

Monroe County Code § 23-197(a) (the "TDT Ordinance"). The Monroe County Code further provides that the tax "shall be charged by the person receiving the consideration for the lease or rental, and it shall be collected from the lessee, tenant or customer at the time of payment of the consideration for such lease or rental." Id. at § 23-197(c).

The nub of the instant dispute is whether the Defendants "rent, lease or let for consideration" hotel space, and whether they are "the person receiving the consideration for the lease or rental," such that they are covered by the TDT Ordinance. The County alleges that Defendants' actions are covered by the ordinance and that Defendants have violated the Ordinance by failing to remit taxes on online room reservation transactions (Count I). The Amended Complaint further alleges that the Defendants are liable to the County for conversion (Count II) and unjust enrichment (Count III). The County seeks a permanent injunction (Count IV) mandating that the Defendants comply with the Ordinance going forward. Defendants argue

---

[2] The Defendants in this action are Priceline.com Inc., Travelweb L.L.C., Travelocity.com L.P., Site59.com L.L.C., Expedia Inc., Hotels.com L.P., Hotwire Inc., Trip Network Inc. (d/b/a Cheaptickets.com), and Orbitz L.L.C. (collectively, "Defendants").
[3] Defendants have submitted the full text of the current Monroe County tourist development tax provisions at dkt # 24-2.

2

that the act of selling room reservations to consumers over the internet is not covered by the Ordinance, and that Counts II – IV also fail for independent reasons.

## II.  STANDARD OF REVIEW

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. U.S., 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir. 1988). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). A complaint must contain enough facts to indicate the presence of the required elements. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir. 2007). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002). However, as long as the allegations rise above a speculative level, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'" Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (*overruled on other grounds by* Twombly, 550 U.S. at 548-49 (citation omitted)).

## III.  ANALYSIS

### A.  Count I: Applicability of the TDT Ordinance to Defendants' Conduct

#### 1.  Ambiguity of the Ordinance and its Enabling Act

At the outset, this Court notes that a previous decision in this District dealing with nearly identical facts and law declined to grant a motion to dismiss filed by the same OTCs who are Defendants here. See Leon County v. Hotels.com, et al., No. 06-21878-CIV-HUCK, 2006 WL

3

3519102, at *1 (S.D. Fla. Dec. 6, 2006). In that case, Leon County, Florida filed suit against the OTCs in an attempt to collect tourist development tax allegedly due under a county ordinance materially identical to the one at issue here. See id. at *3. The Defendants argue vigorously that Leon County was wrongly decided because it failed to consider that, under Florida law, tax statutes of "dubious or unclear applicability" must be "construed strongly in favor of the taxpayer and against the government." See Assocs. Commercial Corp. v. Sel-O-Rak Corp., 746 F.2d 1441, 1444 (11th Cir. 1984); see also Florida ex rel. Indep. Life & Accident Ins. Co. v. Dickinson, 212 So.2d 293, 295 (Fla. 1968).

Neither the TDT Ordinance nor the enabling act under which it is promulgated is ambiguous. Section 125.0104(3), Florida Statutes, ("the Enabling Act") states in pertinent part as follows:

> It is declared to be the intent of the Legislature that every person who rents, leases, or lets for consideration any living quarters or accommodations in any hotel, apartment hotel, motel, [or] resort motel . . . is exercising a privilege which is subject to taxation under this section . . .

§ 125.0104(3)(a), Fla. Stat. The County alleges that the Defendants do indeed "rent, lease, or let for consideration" hotel rooms, and, as Defendants acknowledge, at this stage of the proceedings this allegation must be accepted as true. There is no ambiguity to resolve, either in the plain language of the Enabling Act or the TDT Ordinance, both of which include the terms "rent, lease, or let for consideration." See Monroe County Code § 23-197(a). If Defendants do in fact "rent, lease, or let" rooms for consideration, they are engaging in a practice that is unquestionably subject to taxation under these provisions.

Further, the Complaint plausibly alleges that the Defendants do "rent, lease, or let for consideration" hotel space, based on Defendants' description of their conduct in their own Form 10-K's, filed publicly with the U.S. Securities and Exchange Commission. According to the

Complaint, the Defendants' 10-K's discuss a change in their business model from an "agency model," in which the Defendants merely facilitate room rental transactions between hotels and customers—with rental prices set by the hotel—to a "merchant model," in which the Defendants purchase and receive hotel rooms as inventory and then re-let them to customers at Defendants' determined rate. See Am. Compl. at ¶¶ 18 – 25.[4] However the terms "rent, lease, or let for consideration" are interpreted, it is plausible that those terms include the acts of receiving hotel rooms as inventory, setting a price for their use, and then re-letting them to customers. The instant Motion contests whether the Defendants actually do "purchase" or "take title" to hotel rooms, as indicated in Defendants' Form 10-K's. That, however, is an issue more appropriately determined at the summary judgment stage, after discovery is completed. At this stage, the County has sufficiently alleged, based in part on the Defendants' own public filings, that Defendants follow a business model in which they rent, lease, or let rooms for consideration.

2.  Whether Defendants are "the Person" Receiving Consideration for Rentals

Defendants argue that they are not "the person" receiving consideration for rental transactions, within the meaning of the TDT Ordinance. This assertion was rejected in Leon County. See Leon County, 2006 WL 3519102, at *2. As stated in that decision, taking the County's allegations as true, the Defendants indeed are "the persons" receiving the consideration for the rental transaction. Reading the term "the person" to mean that only a single individual or entity may be subject to taxation for a rental transaction would be inconsistent with the statutory language, discussed above, stating that the TDT Ordinance applies to "every person" renting

---

[4] The Form 10-K's describe the Defendants' actions in the following terms: "[W]e receive inventory . . . and we then process the transactions as merchant of record for the transaction;" "[W]e . . . purchase and take title to the particular product and are the merchant of record;" "[W]e contract with hotels and other lodging properties . . . and resell these rooms to customers . . ."; "[W]e receive inventory directly from a hotel at a negotiated rate, and we determine the retail price at which we choose to offer it to the hotel;" "Travelocity serves as the merchant of record in the transaction rather than a sales agent." Am. Compl. at ¶¶ 18 – 25.

5

rooms for consideration. See APA Excelsior III L.P. v. Premiere Techs., Inc., 476 F.3d 1261, 1268 (11th Cir. 2007) (stating that "a statute should, if at all possible, be read so 'as to avoid an unjust or absurd conclusion.'") (quoting In re Chapman, 166 U.S. 661, 667 (1897)). It would also conflict with the Enabling Act language indicating that TDT is to be collected on the "total consideration" charged per rental transaction. § 125.0104(3)(c), Fla. Stat.; see also City of Goodlettsvile v. Priceline.com, 605 F. Supp. 2d 982, 997-98 (M.D. Tenn. 2009) (concluding that OTCs were charged with collecting and remitting taxes on the "entire amount charged" for rental, not merely the wholesale rate). Accordingly, the Complaint sufficiently alleges that the Defendants may be "the person" receiving consideration, within the meaning of the TDT Ordinance.

   3. Previous OTC Taxation Cases

As noted above, a number of similar actions seeking TDT or hotel occupancy tax payments from the OTCs have been filed in state and federal courts, with differing results. Compare, e.g., Pitt County v. Hotels.com, L.P., 553 F.3d 308, 313 (4th Cir. 2009) (concluding that OTCs were not subject to municipal TDT ordinance); City of Orange v. Hotels.com, No. 1:06-CV-413, 2007 WL 2787985, at *5 (E.D. Tex. Sept. 21, 2007) (same); Louisville/Jefferson County Metro Gov't v. Hotels.com L.P., No. 3:06-CV-480-R, 2008 WL 4500050, at *5 (W.D. Ky. Sept. 30, 2008) (same); with City of Goodlettsvile, 605 F. Supp. 2d at 997-98 (denying OTCs' motion to dismiss and concluding that they were subject to municipal TDT ordinance); Leon County, 2006 WL 3519102, at *1 (same); Expedia, Inc. v. City of Columbus, 681 S.E. 2d 122, 127-29 (Ga. 2009) (concluding that OTCs were subject to Georgia municipal TDT ordinance). Each Party here, of course, urges the Court to follow the cases with outcomes favorable to its respective position.

While each of these cases involves slightly different statutory language from the TDT Ordinance—with the significant exception of the Leon County case—the decisions that Defendants cite in support of their Motion are more readily distinguishable. In Pitt County, for example, the "dispositive issue" was whether the OTCs were "operators" of hotels or motels within the meaning of the relevant ordinance. See Pitt County, 553 F.3d at 313. In contrast, Monroe County's TDT ordinance is not limited to those who "operate" hotels. City of Orange is even more readily distinguished, because the tax ordinance in that case explicitly applied only to "hotels or motels," which, of course, the Defendants are not. See City of Orange, 2007 WL 2787985 at *5-6. Lastly, the tax ordinance in Louisville/Jefferson County Metro Government applied to entities who are "doing business as motor courts, motels, hotels, inns or like or similar accommodations businesses." See Louisville/Jefferson County Metro Government, 2008 WL 4500050, at *2. The Defendants here, in contrast, are not "doing business" as hotels or motels, but rather as travel companies.

The TDT Ordinance and the Enabling Act both sweep more broadly than the statutory language used in all the above cases. The statutory terms at issue here are not limited to those "operating" hotels or engaged in a particular line of business, but rather, apply expressly to "every person" who rents rooms for consideration. See § 125.0104(3)(a), Fla. Stat.; Monroe County Code § 23-197(a). The statutory language in the cases cited by Defendants is narrower, and therefore those cases do not support dismissal of this action.

B.   Count II: Conversion

Under Florida law, "a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." Mayo v. Allen, 973 So. 2d 1257, 1258-59 (Fla. 1st Dist. Ct. App. 2008) (citing Star Fruit Co. v. Eagle Lake Growers, Inc., 33 So. 2d 858 (Fla.

7

1948)). Defendants assert three bases for dismissing the County's conversion claim, none of which is meritorious.

    1.    <u>Demand and Refusal</u>

A conversion "may be, but is not always, shown by demand and refusal." <u>Senfeld v. Bank of Nova Scotia Trust Co.</u>, 450 So. 2d 1157, 1161 (Fla. 3d Dist. Ct. App. 1984). "'[D]emand and refusal are unnecessary' where they 'would be futile.'" <u>Ernie Passeos, Inc. v. O'Halloran</u>, 855 So. 2d 106, 109 (Fla. 2d Dist. Ct. App. 2003) (quoting <u>Shelby Mut. Ins.Co. v. Crain Press, Inc.</u>, 481 So. 2d 501, 503 (Fla. 2d Dist. Ct. App. 1986). Here, the County was not required to make a demand for the disputed funds before bringing a conversion claim, as it has adequately stated a claim that the Defendants' original possession of the funds was unlawful. See <u>Mayo,</u> 973 So. 2d at 1259 ("The generally accepted rule is that demand and refusal are unnecessary where the act complained of amounts to conversion regardless of whether a demand is made") (citations and internal quotation marks omitted); <u>Mullenmaster v. Newbern</u>, 679 So. 2d 1186, 1887 (Fla. 4th Dist. Ct. App. 1996) (concluding that demand was not required for conversion claim where defendants' original possession of the disputed funds was unlawful); <u>see also</u> <u>City of Goodlettsville</u>, 605 F. Supp. 2d at 999 (same); <u>City of Charleston v. Hotels.com, L.P.</u>, 520 F. Supp. 2d 757, 772 (D.S.C. 2007) (same); <u>City of Findlay v. Hotels.com, L.P.</u>, 441 F. Supp. 2d 855, 865 (N.D. Ohio 2006) (same).

Further, the County's decision not to first demand the disputed funds is excused for the additional reason that, as the course of this litigation indicates, any such demand would have been rebuffed by the Defendants, and would therefore have been futile. See <u>Ernie Passeos, Inc.</u>,

855 So. 2d at 109.⁵  Accordingly, demand and refusal were not a prerequisite to the County's conversion claim in this case.

        2.      <u>Immediate Right to Possession</u>

Conversion is a possessory action that requires the plaintiff to show a present or immediate right of possession to the property in question. See <u>Ginsberg v. Lennar Fla. Holdings, Inc.</u>, 645 So. 2d 490, 499 (Fla 3d Dist. Ct. App. 1994). For the reasons stated above, the County has sufficiently stated a claim that the Defendants' rental transactions were subject to the TDT Ordinance at the time they occurred. See Monroe County Code § 23-197(c) (stating that TDT is to be collected "at the time of payment of the consideration for such lease or rental"). Accordingly, the County has adequately alleged that it had an immediate right to possession of the disputed funds.

        3.      <u>Specific Fund Requirement</u>

Under Florida law, money is generally the proper subject of a conversion claim where it exists as "a specific fund capable of separate identification." <u>Bankest Imports, Inc. ISCA Corp.</u>, 717 F. Supp. 1537, 1542 (S.D. Fla. 1989). As the Eleventh Circuit has explained, however, "[t]his general rule is an expression of the principle that 'an action in tort is inappropriate where the claim is based on a breach of contract.'" <u>Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead</u>, 162 F.3d 1101, 1109 (11th Cir. 1998) (citing <u>Capital Bank v. G & J Invs. Corp.</u>, 468 So. 2d 534, 535 (Fla. 3d Dist. Ct. App. 1985)). The disputed funds here are not the subject of any contractual relationship between the County and the Defendants. This case is not,

---

⁵ Defendants argue that one Florida case, <u>Ginsberg v. Lennar Fla. Holdings, Inc.</u>, 645 So. 2d 490, 500 (Fla 3d Dist. Ct. App. 1994) stands for the proposition that futility of demand must be explicitly alleged in the complaint. More recent cases, however, state that a plaintiff must simply "show" or "demonstrate" that demand would be futile. See, e.g., <u>Mayo</u>, 973 So. 2d at 1259. To the extent that a showing of demand futility was required here, the County's pleadings are sufficient to meet that requirement.

9

therefore, "an attempt to transform a breach of contract action into a tort action," and accordingly, the specific fund requirement is inapplicable here. See id. Moreover, even if the requirement did apply, it would be satisfied because there are in fact funds "capable of separate identification": the proceeds from the retail step of the Defendants' room rental transactions.

### C.     Count III: Unjust Enrichment

Under Florida law, the elements of an unjust enrichment claim are: "1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." Golden v. Woodford, 15 So. 3d 664, 670 (Fla. 1st Dist. Ct. App. 2009) (quoting Della Ratta v. Della Ratta, 927 So. 2d 1055, 1059 (Fla. 4th Dist. Ct. App. 2006). The County has adequately stated a claim for unjust enrichment. The Amended Complaint alleges that the Defendants conducted their travel business within the state of Florida and the County of Monroe, and thereby "exercise[d] a privilege" within the meaning of the Enabling Act and are subject to taxation under the TDT Ordinance. See § 125.0104(3)(a), Fla. Stat. By exercising this privilege, the Defendants knowingly received an economic benefit, conferred upon them by the County.

By failing to collect and remit the tax allegedly owed on the entire transaction, the Defendants retained this benefit inequitably—assuming, once again, that the County's allegations are true. It is irrelevant that that the Defendants received taxable funds from consumers rather than the County, because the benefit conferred was not the receipt of those funds, but the ability to conduct business within the County. See City of Goodletsville, 605 F. Supp. 2d at 998-99 (permitting unjust enrichment claim to proceed against OTCs, and concluding that "[a]lthough the actual money owing under the Tax Ordinance may have been

paid to the defendants by consumers, rather than by the plaintiff, those funds were fundamentally the property of the plaintiff"). Accordingly, the Defendants' Motion is denied with respect to the County's unjust enrichment claim.

   D.   Count IV: Injunctive Relief

To obtain a permanent injunction under Florida law, a plaintiff must "establish a clear legal right [to the relief requested], an inadequate remedy at law, and that irreparable harm will arise absent injunctive relief." Liberty Counsel v. Fla. Bar Bd. of Governors, 12 So. 3d 183, 186 n.7 (Fla. 2009) (citation and quotation marks omitted).

The County alleges in conclusory fashion that 1) it lacks an adequate remedy at law, and 2) that it will suffer irreparable harm absent a permanent injunction. See Amended Compl. ¶¶ 51-52. The County fails to plead any facts in support of these allegations, however, and therefore has not sufficiently pleaded a claim for injunctive relief. Under § 212, Florida Statutes, the County has a host of administrative, civil, and criminal enforcement remedies to ensure compliance with its tax laws. See, e.g., § 212.12(2)(a), Fla. Stat. (providing for penalty of ten percent for failure to timely pay tax); § 212.12(13), Fla. Stat. (stating that failure to pay TDT is punishable as a misdemeanor, or, if offense involves intentional destruction of records, as a felony); § 212.13, Fla. Stat. (providing for auditing of records of businesses charged with reporting or paying tax). The County has not explained why these provisions are inadequate to safeguard its ability to collect the TDT, such that a permanent injunction is necessary.

The County argues that it need not plead more than it already has with respect to the inadequate remedy and irreparable harm elements because these two elements are presumed satisfied where a government seeks an injunction to enforce its "police power." See Polk County v. Mitchell, 931 So. 2d 922, 926 (Fla. 2d Dist. Ct. App. 2006). Here, however, the County seeks

an injunction in furtherance of its taxing power, which is fundamentally different from its police power. See Fla. Dep't of Banking and Finance v. Credicorp, Inc., 684 So. 2d 746, 750 (Fla. 1996) (distinguishing taxation from use of police power for purposes of the federal Commerce Clause); Graham v. Estuary Props., Inc., 399 So. 2d 1374, 1381 (Fla. 1981) (stating that "valid exercise of the police power" consists only in regulations that relate to promotion of health, safety, welfare, or public morals). Since the County is not seeking an injunction in furtherance of its police power, and has failed to allege facts demonstrating irreparable harm or lack of a legal remedy, its claim for injunctive relief must fail.

Further, the County's proposed relief is the kind of perpetual mandatory injunction that Florida law does not countenance. See Indian Trail Homeowners Ass'n, Inc. v. Roberts, 577 So. 2d 998, 999 (Fla. 4th Dist. Ct. App. 1991). Such an injunction would require this Court to "assume an endless duty inappropriate to its function," see Fla. Jai Alai, Inc. v. S. Catering Servs., Inc., 388 So. 2d 1076, 1078 (Fla. 5th Dist. Ct. App. 1980). This concern is particularly acute here, because the proposed injunction would essentially require a federal district court to indefinitely oversee the administration of a municipal tax ordinance.

## IV. CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Defendants' Motion to Dismiss (dkt # 24) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED with respect to Count IV of the Amended Complaint, for injunctive relief. In all other respects, the Motion is DENIED. It is further

ORDERED AND ADJUDGED that the County shall file a motion for class certification pursuant to Federal Rule of Civil Procedure 23 within fifteen (15) calendar days of the date of

entry of this Order, with Defendants' Response due ten (10) calendar days from the date of filing of the motion, and Plaintiff's Reply due five (5) calendar days thereafter.

DONE AND ORDERED in Chambers at Miami, Florida, this 17th day of December, 2009.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record