## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 09-10004-CIV-MOORE/SIMONTON

THE COUNTY OF MONROE, FLORIDA,

      Plaintiff,

v.

PRICELINE.COM, INC., et al.,

      Defendants.

_____/

## ORDER GRANTING MOTION FOR CLASS CERTIFICATION

THIS CAUSE came before the Court upon Plaintiff's Motion for Class Certification (dkt # 75).  Defendants filed a Response (dkt # 77) and Plaintiff filed a Reply (dkt # 84).

UPON CONSIDERATION of the Motion, the Response, the Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court Orders as follows.

## I.    BACKGROUND

An account of the history of this matter is included in this Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (dkt # 42),[1] which is incorporated herein by reference.  Briefly, Plaintiff, the County of Monroe, Florida ("the County") brings this action on behalf of a putative class of Florida counties that have enacted tourist development taxes ("TDT"), and that allegedly have not received the amounts due from Defendants—various

---

[1] See County of Monroe, Florida v. Priceline.com, Inc., No. 09-10004-CIV-MOORE, 2009 WL 4890664 (S.D. Fla. Dec. 17, 2009).

online travel companies,[2] or "OTCs"—under those tax laws.  This action is one of a number of similar lawsuits filed around the country by municipalities alleging that OTCs have failed to remit taxes due under local TDT ordinances.

The County alleges that under the Defendants' "merchant model," the Defendants obtain room inventory at wholesale rates directly from hotels and hotel chains, and then sell that inventory at a higher retail price, determined by the Defendants, to consumers who book rooms through the Defendants' websites.  The County further alleges that Defendants "charge customers (and remit to the hotels) a 'tax recovery charge' which is sufficient only to cover the tax on the wholesale rate, rather than on the full retail rate which the customers are actually charged."  Pl.'s Mot. at 3.  According to the County, the TDT requires the Defendants to collect tax on the retail transaction as well.  Defendants dispute that their retail transactions are subject to the TDT.  On December 17, 2009, this Court entered an Order (dkt # 42) determining that the County's Amended Complaint (dkt # 23) adequately stated claims for relief as to Count I, for violation of Monroe County Code § 23-197(a); Count II, for conversion; and Count III for unjust enrichment.  The Order dismissed Count IV, for a permanent injunction.

In the instant Motion, the County seeks certification of a class of

[a]ll counties within the State of Florida that: 1) have enacted a tourist development tax under authority of F.S.A. § 125.0104; and 2) have not received the tax due on the amount received by the Defendants as consideration for the rooms rented by them located within those counties.

Am. Compl. ¶ 34.

---

[2] The Defendants in this action are Priceline.com Inc., Travelweb L.L.C., Travelocity.com L.P., Site59.com L.L.C., Expedia Inc., Hotels.com L.P., Hotwire Inc., Trip Network Inc. (d/b/a Cheaptickets.com), and Orbitz L.L.C. (collectively, "Defendants").

## II.     STANDARD OF REVIEW

"For a district court to certify a class action, the named plaintiffs must have standing, and

the putative class must meet each of the requirements specified in Federal Rule of Civil

Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." Klay v.

Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004).  Rule 23(a) requires a putative class to meet

the requirements of numerosity, commonality, typicality, and adequacy of representation.  See

Fed. R. Civ. P. 23(a); Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1265 (11th Cir. 2009).  Here,

the County seeks certification pursuant to Rule 23(b)(3), which requires two additional findings,

specifically: "(1) that common questions of law or fact predominate over questions affecting

only individual members ('predominance'); and (2) that a class action is superior to other

available methods for adjudicating the controversy ('superiority')."  See Vega, 564 F.3d at 1265.

While a district court must not decide the merits of the case at the class certification stage, it "can

and should consider the merits . . . to the degree necessary to determine whether the

requirements of Rule 23 will be satisfied."  Vega, 564 F.3d at 1266 (citations omitted).

## III.    ANALYSIS

### A.    Exhaustion of Remedies

Before reaching the various prongs of the Rule 23(a) and (b)(3) analysis, a discussion of

Defendants' exhaustion of remedies argument is in order.  Defendants argue that Florida statutes

and administrative regulations require the County, and all members of the putative class, to take

a series of steps in the event of an alleged tax deficiency.  Those steps include an audit of the

taxpayer, an assessment of the amounts owed, and, in the event of a dispute regarding the

findings of the audit, further administrative proceedings and possible taxpayer challenges in

Florida state circuit court or administrative venues.  See Defs.' Resp. in Opp'n at 11 – 12 (citing

statutes). Defendants argue that these administrative procedures—which the County and most members of the putative class have allegedly failed to exhaust—are mandatory prerequisites to filing a tax collection lawsuit.[3]  This argument is central to Defendants' claims that the County lacks standing and has failed to prove numerosity, typicality, adequacy, predominance, and superiority.  For the reasons below, however, exhaustion of remedies is irrelevant to the class certification inquiry.

Both the County and Defendants seem to consider exhaustion of administrative remedies to be a merits-based defense that could be litigated at trial.  Under Florida law, however, it is more akin to a prudential abstention doctrine, to be followed—if at all—in the discretion of the court, not upon the decision of the jury.  The doctrine is designed by courts to further certain judicial policy goals.  See Santana v. Henry, 12 So.3d 843, 846 (Fla. 1st Dist. Ct. App. 2009) (citing cases).  As such, it does not pertain to the merits of the case, but rather relates to whether the case is appropriate for judicial resolution at all.

The policies underlying the exhaustion doctrine include limiting judicial intervention in the executive decision-making process; affording agencies an opportunity to review and correct their own errors; deference to administrative expertise; and promoting judicial efficiency.  See, e.g., Key Haven Associated Enters., Inc. v. Bd. of Trs. of Int'l Improvement Trust Fund, 427 So. 2d 153, 157 (Fla. 1982); Santana, 12 So.3d at 846-47.  In light of these policy goals, it is clear why exhaustion of remedies is more commonly raised in the context of a lawsuit challenging administrative action—and why the party invoking the doctrine is typically a government or governmental agency.  See, e.g., Key Haven Associated Enters., Inc., 427 So.2d at 154-56 (Florida Department of Environmental Regulation invoking the doctrine in response to action

---

[3] Despite making this claim in their Response, however, Defendants did not raise it in their Motion to Dismiss (dkt # 24).

alleging unconstitutional taking); <u>Dinehart v. Town of Palm Beach</u>, 728 So.2d 360, 362 (Fla. 4th Dist. Ct. App. 1999) (municipal government invoking the doctrine in response to Florida Whistle-blower's Act lawsuit). As the County notes, however, where the party seeking judicial intervention is the governmental body itself, the doctrine's applicability is dubious. <u>See</u> <u>United States v. Paternostro</u>, 966 F.2d 907, 912 (5th Cir. 1992) (concluding that "[w]here the agency itself decides to pursue a judicial remedy, the exhaustion of remedies doctrine is simply not applicable."). Under these circumstances, the concerns about administrative autonomy which underpin the exhaustion of remedies doctrine are greatly attenuated or not present at all.

Second, even if the exhaustion of remedies doctrine did apply here, any lack of exhaustion would be excused on grounds of futility, and because requiring exhaustion would undermine judicial efficiency. <u>See</u> <u>Sarnoff v. Fla. Dep't of Highway Safety and Motor Vehicles</u>, 825 So. 2d 351, 356 (Fla. 2002) (requiring plaintiffs to exhaust administrative remedies before filing suit because they "had failed to show that recourse to the administrative process would have been futile"); <u>Monroe County v. Gonzalez</u>, 593 So.2d 1143, 1145 (Fla. 3d Dist. Ct. App. 1992). As this Court noted in its Order permitting the County's conversion claim to proceed (dkt # 42 at 8-9), the course of this litigation indicates that any pre-suit demand for payment from the Defendants would have been futile, because Defendants have consistently taken the position, in this case as well as in others filed around the country, that they are not subject to the TDT or similar ordinances. Indeed, as the County notes, Miami-Dade County did dismiss a lawsuit it filed in 2006 against the Defendants, electing to go through the administrative tax collection process. After three years of administrative proceedings, the Defendants filed declaratory judgment actions in state court against Miami-Dade County, challenging the tax assessments and taking the same position that they take here: that they are not subject to the TDT in the first

instance. <u>See</u> State Court Complaints, Ex.'s C – H to Pl.'s Reply, consolidated as <u>Orbitz, L.L.C. et al. v. Miami-Dade County</u>, No. 2009 CA 5006 (2d Jud. Cir.) (dkt #'s 84-3 – 84-8).

While the Defendants were within their rights to take this course of action, it demonstrates that, despite the time and resources expended in the Miami-Dade County administrative proceedings, the administrative process merely delayed judicial determination of the ultimate issue that will be litigated and resolved in this action: namely, whether the Defendants are subject to the TDT. Other courts that have considered exhaustion of remedies in tax actions against OTCs have reached the same conclusion, and this Court finds those decisions persuasive. <u>See</u> <u>City of Goodletsville v. Priceline.com</u>, 605 F. Supp. 2d 982, 991 (M.D. Tenn. 2009) ("[R]equiring the plaintiff to exhaust administrative remedies would be a charade and would simply delay the inevitable judicial resolution of the legal issues presented, while providing little or no benefit for the court, the agency, or the parties"); <u>City of Charleston v. Hotels.com, L.P.</u>, 520 F. Supp.2d 757, 769-70 (D.S.C. 2007); <u>City of Atlanta v. Hotels.com, L.P.</u>, 674 S.E. 2d 898, 900 (Ga. 2009).[4]

In light of the foregoing, the exhaustion of administrative remedies doctrine is inapplicable here and irrelevant to any of the Rule 23 requirements that Defendants contest.

_____

[4] While the Ninth Circuit reached a contrary conclusion in <u>City of Oakland v. Hotels.com, L.P.</u>, 572 F.3d 958 (9th Cir. 2009), this Court finds that decision unpersuasive. Further, that decision is legally distinguishable in that it applied California law, which treats exhaustion of remedies as a jurisdictional requirement. <u>See</u> <u>id.</u> at 960. Under Florida law, however, exhaustion of remedies is not a jurisdictional issue. <u>See</u> <u>Gulf Pines Mem'l Park, Inc. v. Oaklawn Mem'l Park, Inc.</u>, 361 So.2d 695, 699 (Fla. 1978) (stating that requiring exhaustion of remedies is a matter of judicial "policy rather than power"); <u>State Dep't of Revenue v. Brock</u>, 576 So. 2d 848, 850 (Fla. 1st Dist. Ct. App. 1991) (same). Also, unlike the <u>City of Oakland</u> court, this Court has the benefit of the experience of at least one member of the putative class that did pursue administrative remedies—Miami-Dade County—which ultimately proved futile. Further, another case Defendants rely upon, <u>Orange County v. Expedia, Inc.</u>, 985 So. 2d 622 (Fla. 5th Dist. Ct. App. 2008), is inapposite because the plaintiff there did not invoke—and the court did not address—any exceptions to the exhaustion of remedies doctrine. <u>See</u> <u>id.</u> at 628.

Neither the County nor the other members of the putative class were required to resort to the administrative process before filing suit. Accordingly, exhaustion of remedies or the lack thereof has no bearing on whether the County has standing to pursue this lawsuit, or whether the members of the putative class are sufficiently numerous. Defendants further argue that this issue precludes the County from demonstrating typicality, because it subjects the County to a "unique" defense." Def.'s Resp. in Opp'n at 14. As noted above, exhaustion of administrative remedies is not a merits-based defense. Even if it were, however, it would hardly be "unique" vis-à-vis the County, as Defendants argue that all but three of the fifty-nine putative class members have failed to exhaust administrative proceedings. For the same reasons, exhaustion does not create "substantial conflicts" between the County and other putative class members such that the County would not be an adequate class representative. Lastly, because neither the Court nor the jury will be called upon to make individualized determinations—or any other kind of determinations—as to exhaustion, it is irrelevant to the Rule 23(b)(3) requirements of predominance and superiority.

> B.   Class Definition and Standing

"Before analyzing the Rule 23(a) requirements, or as part of the numerosity inquiry, a court must determine whether the class definition is adequate." O'Neill v. The Home Depot U.S.A., Inc., 243 F.R.D. 469, 477 (S.D. Fla. 2006) (citing cases). A class should be accurately defined; certification should be denied where the class definition is "overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." Perez v. Metabolife Int'l, Inc., 218 F.R.D. 262, 269 (S.D. Fla. 2003). The requirement of an accurate class definition is satisfied here: the County's proposed class definition is concise and specific, and permits ready identification of the

fifty-nine counties who comprise the class. See Florida County TDT Ordinances, Pl.'s Ex. A (dkt # 65-1). Defendants object, however, that the second prong of the class definition employs terms that are dependent upon resolving the County's claim on the merits—specifically, that it defines the class based on whether the class members have received the "tax due" under the TDT. This is a legitimate objection: whether tax is "due" on the Defendants' transactions will not be known until this case is resolved on the merits. Any defect in the second prong of the definition, however, is not fatally defective to the definition as a whole, because the second prong is essentially surplusage: a class definition that consisted only of the first prong—i.e., all Florida counties that have enacted a TDT ordinance under the Enabling Act—would still encompass the fifty-nine counties that comprise the County's putative class. Adding a second prong that refers to whether those counties have received "tax due" neither narrows nor enlarges the class. Because the second prong is at best irrelevant and at worst defective, the Court will excise the second prong from the class definition, and limit the class definition to "all counties within the State of Florida that have enacted a tourist development tax under authority of § 125.0104, Florida Statutes."

Defendants also argue that the class definition is flawed because sixteen members of the putative class lack standing to assert TDT claims individually. Specifically, Defendants argue that sixteen Florida counties have enacted TDT ordinances, but do not administer those ordinances themselves, instead leaving that task to the Florida Department of Revenue ("DOR").[5] Because the DOR administers, collects, and enforces these counties' TDT ordinances, Defendants claim that the DOR is the only party that has standing to sue on their

---

[5] These counties are Citrus, Columbia, Flagler, Gilchrist, Glades, Hamilton, Hendry, Highlands, Holmes, Jefferson, Levy, Madison, Okeechobee, Pasco, St. Johns, and Taylor counties. See Def.'s Resp. in Opp'n at 8-9 n. 7.

behalf.  The counties in question, however, have standing for the simple reason that the

Defendants' alleged failure to collect and remit TDT harms the counties themselves—not the

DOR, which merely collects and then disburses the TDT to the counties on a monthly basis, as

required by statute.  See § 125.0104(3)(i), Fla. Stat.  To have standing, a plaintiff must show (1)

an "injury-in-fact," (2) a causal connection between the alleged injury and defendant's

challenged action, and (3) that "the injury will be redressed by a favorable decision."  Shotz v.

Cates, 256 F.3d 1077, 1081 (11th Cir. 2001) (citing Lujan v. Defenders of Wildlife, 504 U.S.

555, 560-61 (1992)).  All members of the putative class meet all three prongs: the alleged injury

they suffer is (1) a lack of tax revenues, caused by (2) Defendants' alleged failure to properly

collect and remit TDT, which (3) could be redressed by a favorable judgment in this Court.  In

contrast, Defendants do not, and cannot, identify any injury suffered by the DOR that would

confer standing upon that agency.  The DOR is therefore not a real party in interest to this action,

much less the only party with standing to sue for the sixteen counties that do not self-administer

their TDT ordinances.  Accordingly, the County's class definition is not fatally overbroad for

including these counties.

> C.     Rule 23(a) Requirements

> > 1.   Numerosity

Rule 23 requires a class to be "so numerous that joinder of all members is impracticable."

Fed. R. 23(a)(1).  As a general rule, a class of less than twenty-one members is inadequate, and a

class of more than forty members is adequate.  See Cox v. Am. Cast Iron Pipe Co., 784 F.2d

1546, 1553 (11th Cir. 1986); see also Newberg & Conte, Newberg on Class Actions, § 3.5 at 247

(4th ed. 2002) (hereinafter "Newberg") ("[A]s few as 40 class members should raise a

presumption that joinder is impracticable and the plaintiff whose class is that large or larger

should meet the test of Rule 23(a)(1) on that fact alone"). The putative class consists of fifty-nine Florida counties, and therefore is presumptively large enough to satisfy the numerosity requirement.[6] The class members' geographic dispersion also militates in favor of a finding that joinder is impracticable, as at least one other federal district has found in a similar action against these Defendants. See City of San Antonio v. Hotels.com, Case No. SA-06-CA-381-OG, 2008 WL 2486043, at *5 (W.D. Tex. May 27, 2008) (concluding that it would be impracticable and uneconomical to join a class of 175 geographically dispersed cities with the same claims and same alleged injuries). Accordingly, the numerosity requirement is satisfied.

### 2. Commonality

Commonality demands that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This is a "relatively light burden" that "'does not require that all the questions of law and fact raised by the dispute be common' . . . or that the common questions of law or fact 'predominate' over individualized issues." Vega, 567 F.3d at 1268 (quoting Cox, 784 F.2d at 1557)). Rather, "at least one issue affecting all or a significant number of proposed class members" is sufficient. Fabricant v. Sears Roebuck, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Allegations of a common course of conduct by defendants affecting all class members will satisfy the commonality requirement. See In re Terazosin Hydrochloride Antitrust Litig., 220 F.R.D. 672, 685-86 (S.D. Fla. 2004); Fabricant, 202 F.R.D. at 313; see also Newberg, § 3.10 at 277-78.

Common issues of law and fact exist here. All of the class members have enacted TDT ordinances under the authority of the Enabling Act. The Enabling Act dictates the percentage of

---

[6] While Defendants argue that the class should not include counties that have failed to exhaust administrative procedures or counties that outsource their TDT collection to the DOR, those arguments fail for the reasons stated above.

tax that counties may impose, how it must be calculated and collected, who is to remit the tax, and upon whom it may be imposed. All of the class members' TDT ordinances track the language of the Enabling Act verbatim or nearly verbatim, or simply incorporate the language of the Enabling Act by reference. See Florida County TDT Ordinances, Pl.'s Ex. A (dkt # 65-1). All of the ordinances therefore impose the duty of collecting and remitting TDT on "the person who rents, leases, or lets for consideration" hotel rooms, and require the TDT to be "charged by the person receiving the consideration for the lease or rental." §§ 125.0104(3)(a)(1), (3)(c), (3)(f), Fla. Stat. Further, all class members allegedly suffer the same type of injury as a result of a course of conduct by the Defendants—the "merchant model" of room rental—that is common to all class members.[7] Accordingly, the commonality requirement is satisfied here.

      3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical . . . [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." Vega, 564 F.3d at 1275 (citations and quotation marks omitted). Commonality and typicality are related, but "[t]raditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." Id. (citations and

---

[7] Defendants do not dispute that the merchant model is effectuated similarly as to all class members. See Resp. in Opp'n at 4 n.2 ("For purposes of class certification only, Defendants are not arguing that each Defendant's merchant model practices are not similar across Florida."); Order on Plaintiff's Motion to Compel Discovery and For Sanctions (dkt # 73 at 2) ("At the hearing [before Magistrate Judge Simonton], Defendants stipulated . . . that as to Plaintiff's class certification motion the merchant agreements with respect to Monroe County were representative of the statewide merchant agreements.")

quotation marks omitted).  Like commonality, typicality is not a demanding test.  See In re Disposable Contact Lens Antitrust Litig., 170 F.R.D. 524, 532 (M.D. Fla. 1996).

The County's claims are typical of those of the rest of the class.  Its TDT ordinance, like all the other class members', is enacted under the authority of the Enabling Act.  The County's ordinance is materially identical to the other class members' TDT ordinances, in that it imposes a TDT on "every person who rents, leases or lets for consideration" hotel rooms or similar accommodations.  Monroe County Code § 23-197(a).  The County's tax, conversion, and unjust enrichment claims[8] are therefore premised upon the same alleged injury experienced by the other class members, and will be subject to class-wide proof.  See City of San Antonio, 2008 WL 2486043, at *6 (concluding that class representative in OTC taxation case was typical of the class where "all putative class members will contend that Defendants have a legal duty to collect and remit bed taxes on the [retail] amount charged to the hotel occupant . . . rather than the lower [wholesale] amount that Defendants negotiate with the suppliers . . . .").  Accordingly, the County has established that its claims are typical of the other class members' claims.

### 4.  Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement protects the rights of the absent class members who will be bound by the judgment.  The adequacy inquiry examines "(1) whether any substantial conflicts of interest exist between the

---

[8] Under Florida law, "conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time."  Mayo v. Allen, 973 So. 2d 1257, 1258-59 (Fla. 1st Dist. Ct. App. 2008) (citations omitted).  The elements of an unjust enrichment claim are: "1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it."  Golden v. Woodford, 15 So. 3d 663, 670 (Fla. 1st Dist. Ct. App. 2009) (citations omitted).

12

representatives and the class; and (2) whether the representatives will adequately prosecute the action." <u>Valley Drug Co. v. Geneva Pharms., Inc.</u>, 350 F.3d 1181, 1189 (11th Cir. 2003).

As to the first factor, nothing in the record indicates any substantial conflict of interest between the County and the other class members. The County's economic and policy interests in obtaining revenue do not conflict in any way with the interests of the other class members— indeed, those interests are perfectly aligned with the rest of the class. Nor is there any indication that Defendants' conduct has harmed some members of the class while benefiting others. <u>See</u> <u>id.</u> ("A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class"). Rather, as discussed above, Defendants' course of conduct has allegedly harmed all class members, including the County, in the same way.

As to the second factor, the County must demonstrate that its counsel will vigorously protect the interests of the class. The County has proposed a co-lead counsel team of five firms, and has submitted a summary of those firms' involvement in complex litigation and class action cases.[9] The Court has reviewed proposed class counsel's advocacy in this matter, counsel's experience in other complex cases—including OTC tax cases—and has considered the requirements for appointment of class counsel outlined in Rule 23(g).[10] Counsel have

---

[9] The firms are Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.; Aronovitz Law; Freed & Weiss L.L.C.; Richard J. Burke L.L.C.; and Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein. <u>See</u> Law Firm Biographies, Ex. I. to Pl.'s Mot. for Class Certification (dkt # 65-11).

[10] Rule 23(g) states in pertinent part:

> [A] court that certifies a class must appoint class counsel. In appointing class counsel, the court:
> (A) must consider:
>     (i) the work counsel has done in identifying or investigating potential claims in the action;

demonstrated familiarity with the relevant law, have substantial experience in litigating class actions and other complex matters, have taken extensive discovery to investigate the County's claims, and have committed significant resources to litigating this case. The Court has no reason to doubt counsel's ability to vigorously represent the class.

Defendants do not challenge proposed class counsel's ability to vigorously prosecute this suit, and do not allege any substantial conflicts between the County and other class members.[11] Defendants argue that the County is nonetheless an inadequate representative because Robert Shillinger ("Shillinger"), the chief litigation counsel for Monroe County, has not demonstrated sufficient familiarity with the facts or legal issues involved in this case. According to Defendants, Shillinger is the "main County point person responsible" for this case. See Resp. in Opp'n at 23. Shillinger, however, is not the named class representative, and is not even counsel of record for the County in this case. Because the County is represented by a large group of outside attorneys and firms, Shillinger's conduct is irrelevant to the adequacy inquiry. Furthermore, attacks on a class representative's knowledge of and involvement in a case are also generally irrelevant to the adequacy inquiry. See Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 370-37 (1966) (concluding that named class representative was adequate although she was not proficient in English, did not understand the claims made in the complaint, and generally had only a "very small degree of knowledge" of the lawsuit); Dujanovic v. MortgageAmerica, Inc.,

---

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law;
(iv) the resources that counsel will commit to representing the class;
(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the class; . . .

Fed. R. Civ. P. 23(g)(1).
[11] As discussed above, the alleged failure to exhaust remedies does not represent a substantial conflict and is not relevant to the class certification inquiry.

185 F.R.D. 660, 668 (N.D. Ala. 1999) ("[L]ack of specific knowledge about the claims is not grounds for denying certification where the representative's counsel is capable of handling the litigation"); Newberg, § 3.34 (noting that challenges that focus on "plaintiff's motives, status, knowledge, or individual circumstances, have largely been rejected by the courts as irrelevant to the issues of adequacy").  Accordingly, Defendants' arguments do not alter the Court's conclusion that the County will be an adequate class representative and will sufficiently protect the rights of absent class members.

   D.   Rule 23(b)(3) Requirements

   A class action proceeding under Rule 23(b)(3) must satisfy two additional requirements: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)(1) – (2).  Rule 23(b)(3) lists four factors that are relevant to this inquiry:

   (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
   (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
   (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
   (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A) – (D).  These factors "are important and generally should inform courts' analysis," but analysis of all four is not strictly mandatory in every case.  Vega, 564 F.3d at 1278 n.19.  The Court considers these factors in connection with the superiority inquiry below.

   1.  Predominance

   Common issues of law or fact predominate where they "'ha[ve] a direct impact on every

class member's effort to establish liability' that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." Vega, 564 F.3d at 1270 (quoting Klay, 382 F.3d at 1255). "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of their individual claims," the predominance requirement has not been met. Klay, 382 F.3d at 1255.

Common issues predominate here. As discussed above, all class members have materially identical TDT ordinances, and thus all class members' claims will be premised on an identical legal theory. Further, Defendants' merchant model of operation is the same throughout the state, giving rise to identical claims with respect to all class members. The County also identifies a number of issues of law and fact common to all class members' claims, including but not limited to (1) whether Defendants purchase hotel rooms or the right to occupy hotel rooms at "wholesale" rates; (2) whether and how Defendants re-sell hotel rooms to customers at retail rates; (3) whether the Defendants "rent, lease or let for consideration" hotel rooms within the meaning of the Enabling Act and the class members' TDT ordinances; (4) whether Defendants were and are required to remit TDT to the members of the class; and (5) assuming that the Defendants are required to remit TDT, whether Defendants' remittances on the "wholesale" rate are sufficient to comply with the TDT ordinances. See Pl.'s Mot. at 19. All the class members' claims against Defendants will succeed or fail based on how these questions are resolved. The tax claims turn on whether Defendants' transactions are subject to the tax at all. The applicability of the tax will also determine in large part whether (1) Defendants have engaged in "unauthorized acts" depriving the class members of property, for purposes of the conversion claim, and (2) whether the Defendants have been unjustly enriched by their conduct.

In contrast, Defendants do not identify any significant issues that would need to be resolved on an individualized basis. Defendants point to a number of supposedly individualized issues, such as the rate of tax applied by each class member's TDT ordinance; whether a county's ordinance contains a penalty provision for non-payment of tax; the rate of interest applicable to particular transactions; and several other issues. <u>See</u> Resp. in Opp'n at 18. All of these issues, however, relate to calculating damages, rather than liability. They therefore do not bar a finding of predominance here. <u>See</u> <u>Allapattah Servs., Inc. v. Exxon Corp.</u>, 333 F.3d 1248, 1261 (11th Cir. 2003) ("[N]umerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate").[12] Defendants also refer, without elaboration, to unspecified "registration requirements." <u>See</u> Resp. in Opp'n at 18. Defendants do not explain what registration requirements are relevant to the claims or defenses in this case, or why they will require individualized proof. Therefore, there is no evidence that these issues, if they are in fact individualized, will be more substantial than the many common issues of law and fact.

Defendants further argue that they intend to assert a dormant Commerce Clause defense which will not be susceptible to class-wide proof. Specifically, Defendants argue that activity cannot be taxed unless it has a "substantial nexus" with the taxing jurisdiction, and that this inquiry must be conducted on a county-by-county basis. Without deciding the merits of this issue, the Court notes that a similar argument has previously been deemed irrelevant to the class certification inquiry. <u>See</u> <u>City of San Antonio</u>, 2008 WL 2486043 at *14 (concluding that "substantial nexus" argument "is a red herring because the occupant of the room (who is the

---

[12] The County also argues that damages in this action can be calculated by way of a straightforward formula. This was the practice in at least one other OTC tax class action. <u>See</u> <u>City of San Antonio</u>, 2008 WL 2486043, at *12 - *13.

taxpayer) is already being taxed, and the Defendants have already been collecting and remitting taxes on the rooms they sell."). Assuming without deciding that the "substantial nexus" issue generally does call for a jurisdiction-by-jurisdiction inquiry, that is presumably because in most cases, a defendant's conduct is not the same across various taxing jurisdictions. As discussed above, however, it is undisputed that Defendants' conduct is the same as to all class members. Therefore, Defendants' Commerce Clause defense will either pertain to every class member, or to none of them. Essentially, individualized proof as to any county on this issue will result in a finding that is applicable to every county.

Next, Defendants argue that the County's unjust enrichment claim is not suitable for class action treatment. The Eleventh Circuit has indeed said that unjust enrichment claims are usually unsuitable for class-wide resolution. See Vega, 564 F.3d at 1274. While this is undoubtedly true in most cases, the Eleventh Circuit's underlying concern is that unjust enrichment claims typically require individualized inquiries into the equities of each class member's interaction with each defendant. See id. This concern, however, is not present here. As discussed above, it is undisputed that Defendants' business operations are the same as to all members of the putative class. Given this fact, it is difficult to conceive of any significant equitable differences between class members, and Defendants do not suggest any. Accordingly, the County's unjust enrichment claim does not preclude a finding of predominance.[13]

Finally, Defendants cite one OTC tax case in which a federal district court concluded that common issues did not predominate. See City of Fairview Heights v. Orbitz, Inc., No. 05-CV-

_____

[13] While not dispositive, a number of district court decisions within the Eleventh Circuit have certified class actions that included unjust enrichment claims. See, e.g., Smith v. Georgia Energy USA, L.L.C., 259 F.R.D. 684, 688-90 (S.D. Ga. 2009); In re Terazosin Hydrochloride Antitrust Litig., 220 F.R.D. at 697-98; Veal v. Crown Auto Dealerships, Inc., 236 F.R.D. 572, 581 (M.D. Fla. 2006); Singer v. AT&T Corp., 185 F.R.D. 681, 688 (S.D. Fla. 1998).

840-DRH, 2008 WL 895650, at *4 (S.D. Ill. March 31, 2008).  That case is distinguishable. There, the members of the putative class had tax ordinances that were not materially identical: some imposed a "use" tax, while others imposed an "occupancy" tax. The City of Fairview Heights court therefore concluded that resolution of the putative class members' claims would likely require individualized inquiries into each municipality's taxing ordinance. See id. Here, however, the TDT ordinances at issue in this case are all promulgated under the authority of the same Enabling Act and are all materially identical.  Accordingly, the individualized issues that precluded class certification in City of Fairview Heights are not present here.

    2.  Superiority

The superiority inquiry focuses on "whether there is a better method of handling the controversy than through the class action mechanism." Klay, 382 F.3d at 1269 (quoting In re Managed Care Litig., 209 F.R.D 678, 692 (S.D. Fla. 2002)).  Whether common issues predominate "has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." Id.  Accordingly, the conclusion that common issues of law and fact predominate here strongly militates in favor of a class action as a superior means of litigating this case.

Furthermore, the Rule 23(b)(3) factors weigh in favor of this case being tried as a class action.  It is highly desirable that this case be consolidated in this Court.  The alternative, which has played out over the last several years, is a number of individual lawsuits and administrative proceedings conducted piecemeal throughout the state of Florida, all seeking to resolve the same basic legal question.  Trial in this case is presently scheduled for the two-week trial period beginning July, 19, 2010, which offers the Parties a relatively speedy resolution of their dispute.

This Court has already determined that the County has adequately stated three claims for relief, and a number of issues related to the exchange of discovery have been resolved. The class members have been identified and may be easily notified of this action. Given the number of issues subject to class-wide proof, there will be no unique difficulties in managing this case as a class action, beyond those inherent in complex cases.[14]  While some members of the class have independently commenced litigation against the Defendants and certainly have an interest in controlling the outcome of that litigation, they can easily and adequately protect that interest simply by opting out of the class.[15]  Given the alternatives, class action treatment is a superior means of resolving the County's claims.

## III.   CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that the County's Motion for Class Certification (dkt # 75) is GRANTED, with the class certified as "all counties within the State of Florida that have enacted a tourist development tax under authority of § 125.0104, Florida Statutes." This class is subject to decertification or adjustment as appropriate. It is further

ORDERED AND ADJUDGED that the County's proposed class counsel team is hereby APPOINTED to represent the class in this matter. Class counsel is directed to promptly provide notice of this action to the members of the class as required by Fed. R. Civ. P. 23(c)(2)(B)  It is further

---

[14] To further assist the Court in the management of this action, the County will be required to submit proposed jury instructions and a trial plan, on an expedited basis. See Vega, 564 F.3d at 1279 n.20 (recommending that class action plaintiffs be required to present feasible trial plans and proposed jury instructions as early as practicable).

[15] The class members here, county governments, will be better equipped to assess their rights and to evaluate the consequences of opting out than the lay individuals who comprise most classes.

ORDERED AND ADJUDGED that within thirty (30) days of the date of entry of this Order, the county shall file proposed jury instructions and a trial plan.  It is further

ORDERED AND ADJUDGED that the County's Motion for Hearing (dkt #65) is DENIED AS MOOT.

DONE AND ORDERED in Chambers, at Miami, Florida, this <u>15th</u> day of March, 2010.

_____
**K. MICHAEL MOORE**
**UNITED STATES DISTRICT JUDGE**

cc: All counsel of record